UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FRANCESCA RENE HARRIS,

                    Petitioner,

v.                                    Case No. 3:05-cv-306-J-32HTS

WALTER A. MCNEIL,[1]
et al.,

                    Respondents.
_____

**ORDER**

**I. Status**

　　Petitioner Francesca Rene Harris, an inmate of the Florida penal system who is proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition) pursuant to 28 U.S.C. § 2254 on April 4, 2005. Petitioner Harris challenges a 2003 state court (St. Johns County, Florida) judgment of conviction for two counts of sale of cocaine on the following ground:   the plea was involuntary because of

_____

[1] Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Walter A. McNeil is substituted for James V. Crosby as the proper party Respondent having custody over Petitioner.

threats of harsher treatment if Petitioner insisted on proceeding to trial.

Respondents have responded. <u>See</u> Respondents' Response to Petition (Doc. #16) (hereinafter Response). In support of their contentions, they have submitted exhibits.[2] Petitioner was given admonitions and a time frame to respond. <u>See</u> Court's Order to Show Cause and Notice to Petitioner (Doc. #15). Petitioner has responded and has submitted exhibits in support of her contentions. <u>See</u> Petitioner's Response to Respondents' Notice of Filing Supplemental Appendix (Doc. #20); Petitioner's Response to Order to Show Cause (Doc. #18); Petitioner's "Respond to Amended Standing Order in Re: Filing of Documents that Exceed Twenty-Five Pages" (Doc. #13). This case is now ripe for review.

## II. Procedural History

On or about January 23, 2003, Petitioner Harris was charged by Information with two counts of sale of cocaine. Ex. 2. On February 13, 2003, Petitioner Harris entered a plea of nolo contendere to both counts, as charged, in exchange for an agreed-upon sentence of ten years of incarceration on each count, to run concurrently.

On February 13, 2003, Petitioner Harris appeared for arraignment before the Honorable Robert K. Mathis, at which Judge

---

[2] The Court will hereinafter refer to Respondents' exhibits as "Ex." <u>See</u> Response (Doc. #16); Respondents' Notice of Filing of Supplemental Appendix (Doc. #17).

Mathis appointed the Public Defender's Office to represent Petitioner Harris. Ex. 3, Transcript of the February 13, 2003, Proceedings (hereinafter Tr.) at 3. On that same day, Ms. Peshek,[3] an Assistant Public Defender, appeared to represent Petitioner and updated Judge Mathis on the status of Petitioner's case, stating:

> Your Honor, the State did make a plea offer. She indicated to me she did not wish to accept that plea offer at this time. She wanted to see the videotapes first. The plea offer, You[r] Honor, was ten years in the Department of Corrections.
>
> . . . .
>
> Your Honor, I did explain to her the plea offer was ten years, that her exposure is 30 years without habitual offender treatment and 60 years with habitual offender treatment.

Id. at 4. Petitioner Harris acknowledged that Ms. Peshek had informed her of the plea offer and her maximum exposure. Id.

Thus, Judge Mathis stated that he would "show a plea of not guilty entered on Ms. Harris' behalf" and set her case for May. Id. He then asked the prosecutor about Petitioner Harris' record, and the prosecutor stated:

> Your Honor, she exhibits six prior sales, one prior sale of counterfeit cocaine, one possession of cocaine, and eight various and sundry misdemeanors.

---

[3] Ms. Renee Hunt Peshek, an Assistant Public Defender in St. Johns County, Florida, was admitted to the Florida Bar in 1985. See http://www.floridabar.org. Thus, at the time of the February 13, 2003, proceedings, she had been eligible to practice law in Florida for over seventeen years.

_Id_. at 5.[4]   Recognizing her "terrible record," Judge Mathis informed Petitioner that she would be taken into custody until she posted the remainder of her bond.   _Id_.

Thereafter, that same day, Petitioner Harris appeared in court with Assistant Public Defender James Edward Jacobs, who updated Judge Mathis on the status of the State's plea offer to Petitioner as follows:

> Your Honor, Ms. Peshek and I have both talked to Ms. Harris a little more extensively about this, and Ms. Harris understands that she would be facing a substantial period of time.  It looks to me from the charges alone she'd be facing a potential liability of up to 30 years or so.
>
> She indicates to me -- and she understands that this plea offer was only left open for today only, the plea being ten years Department of Corrections.  Ms. Harris indicated to me that she did want to take advantage of the plea offer and that she did want to tender a no contest plea at this time.
>
> And that would be the extent of the plea agreement.  The ten years would be concurrent on both Counts 1 and 2.

_Id_. at 6.  Petitioner affirmed that she wanted to enter the plea.

_Id_.

---

[4] The sentence computation on the Criminal Punishment Code Scoresheet reflects a lowest permissible prison sentence of 24.45 months and a maximum sentence of thirty years.  Ex. 4.  The prosecutor conceded that Petitioner Harris would not qualify for habitualization, and both defense counsel (Ms. Peshek and Mr. Jacobs) noted that the maximum possible sentence was thirty years of incarceration without habitualization.  Tr. at 4, 6, 11-12.

Judge Mathis informed Petitioner Harris of the sentencing possibilities if she were to proceed to trial.

> Sale of cocaine carries up to 15 years in the Florida State Prison, a $10,000 fine or both such fine or imprisonment. You may be considered for probation or lesser sentencing. If your plea is accepted, when you're sentenced I must impose against you court cost of $258, restitution, if there is any, damages for victim injury, if any, an attorney's fee if your attorney is court appointed, and a fine if I decide to impose a fine. You should be prepared at sentencing to present evidence of your ability to pay those items.

Id. at 7. Judge Mathis informed Petitioner Harris of her constitutional rights. Id. at 9.

Petitioner acknowledged that entering the plea was in her best interest, that no one had used any threats, force, pressure or intimidation to make her enter the plea of no contest and that no one had promised her anything, other than the plea bargain, to persuade her to enter the plea. Id. at 10-11.

The State set forth the factual basis for the plea as follows:

> [The] State would be prepared to show that on or about December 4th, 2002, within St. Johns County the defendant did then and there sell cocaine to a police officer. And on or about December 5th within St. Johns County, the defendant again sold cocaine.

Id. at 11. Petitioner Harris acknowledged that she wished to enter the plea of no contest. Id. Judge Mathis accepted the plea, adjudged her guilty of the offenses and sentenced her to a term of

ten years of incarceration on each count, to run concurrently.  Id.
at 11-12; Ex. 1, Judgment.

Petitioner, through counsel, appealed by filing an initial
brief, as well as a motion to withdraw as counsel for Petitioner,
pursuant to Anders v. California, 386 U.S. 738 (1967).  Ex. 5,
Initial Brief of Appellant.  On October 7, 2003, the appellate
court per curiam affirmed, citing State v. Causey, 503 So.2d 321
(Fla. 1987).[5]  Harris v. State, 856 So.2d 1057 (Fla. 5th DCA 2003);
Ex. 6.  The mandate was issued on October 24, 2003.  Ex. 7.

On or about October 17, 2003, Petitioner filed a *pro se* Motion
to Mitigate Sentence pursuant to Fla. R. Crim. P. 3.800(c), in
which she claimed that incarceration would not help her overcome
her drug problem.  Specifically, she requested the following:

> I am asking that you lower my sentence
> and put me in an outpatient facility to help
> me deal with my drug addiction and my problems
> with anger and self esteem issues so I can
> make my life better.
>
> I want to be able to take care of my
> mother.  I want to be a good citizen who can
> give back to my community in a positive way,

---

[5] In State v. Causey, 503 So.2d 321 (Fla. 1987), the Florida
Supreme Court held that (1) the appellate court is required to
examine the record to the extent necessary to discover any errors
apparent on the face of the record when an Anders brief has been
submitted, stating that the public defender found no reversible
error even worthy of good-faith argument, and (2) the appellate
court, which reviews the record after the Anders brief has been
submitted, must, except in extreme or extraordinary circumstances,
request that briefs be submitted on issues raised by the court
before rendering its opinion.

> instead of costing my community in a negative
> way.

Ex. 17.  Finding the motion to be without merit, the trial court denied the motion on October 28, 2003.  Ex. 18.

On or about December 5, 2003, Petitioner filed a *pro se* motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850, in which she raised the following claims: (1) counsel failed to meet the degree of effectiveness pursuant to constitutional standards; (2) counsel failed to investigate and prepare a defense during preliminary proceedings; (3) counsel misadvised and coerced Petitioner, which resulted in an involuntary plea; (4) Petitioner was not advised of the minimum and the maximum potential penalties for the charges, and Petitioner failed to understand the consequences of the plea and the maximum penalty provided by law; (5) Petitioner's plea was "hurried" and treated "summarily" and "lightly"; (6) counsel failed to file an appeal in a timely fashion when requested by Petitioner; and (7) counsel failed to make an effort on Petitioner's behalf by failing to request an evidence tape, and when the Assistant Public Defenders were changed, the new attorney did not know about the case.  Ex. 8.

On April 23, 2004, the trial court denied the motion for post conviction relief, stating in pertinent part:

> In ground one, the Defendant alleged that
> counsel failed to meet the degree of
> effectiveness, pursuant to constitutional
> standards, but without any specificity as to
> what those grounds might be.

In ground two, the Defendant claims that counsel did not conduct an investigation and prepare [a] defense.  The Defendant in this case, pled at arraignment to a negotiated sentence to ten years.  The Defendant was clearly placed on notice that she was giving up all rights, including the rights [sic] to a trial in this case, as part of the plea dialogue.  When Defendant was first questioned concerning her case, she indicated thru counsel that she wished to enter a plea of not guilty, and see the videotapes of the sale transaction first.  After further consultation with her counsel, and explanation as to what her maximum possible penalty would be, to wit: 30 years; (see transcript, page 4, lines 2 thru 18) the possible plea agreement was discussed, the Defendant was in fact, advised of the maximum possible penalties, and on line 20 of the transcript of the proceedings, she acknowledged that she had been told of those matters.  The Defendant does not allege in her motion for post conviction relief, what benefit would have been derived from further investigation.  The Defendant clearly understood that she had sold cocaine, on videotape to undercover officers.

Ground three is a mere conclusio[na]ry ground which alleges that counsel misadvised the Defendant, but does not indicate what that misadvise [sic] would be.

Ground four is clearly refuted by the record.  The Defendant was advised, on page 4 of the transcript of the proceedings, that the maximum possible penalty is 30 years, and the Defendant was clearly placed on notice at the time of the plea, once again on page 6, line 7 of the transcript, that she was facing a potential liability of 30 years, and on lines 15 thru 17, that the extent of the plea agreement would be 10 years incarceration, concurrent on both counts.  The Defendant did note and acknowledge that it was her intention, on line 20, page 6.  Ground four is therefore clearly without merit.

8

In ground five, the Defendant alleges that she feels the guilty plea was hurried and treated lightly. The Court conducted a full and complete plea colloquy. The Defendant had ample opportunities to object to any matters which were proffered or may have asked any questions, and failed so [sic] to do.

In ground six, the Defendant alleged that the attorneys failed to file an appeal when requested. This is clearly refuted by the record. The Defendant's notice of appeal was filed within 30 days. The 5th DCA heard the appeal and per curiam affirmed the case.

Ground seven is another, clearly conclusionary ground, which seeks to lump together all the previous grounds. There was no specificity shown as to what benefit would be derived by counsel's performance.

Ex. 9, Order on Motion for Post Conviction Relief.

On appeal, Petitioner Harris filed a *pro se* initial brief, raising one issue: the trial court erred in denying Petitioner's motion for post conviction relief on the ground that her plea was involuntarily entered. Ex. 10 at 6. Specifically, she claimed that the plea colloquy was constitutionally insufficient to assure that her plea was intelligently and voluntarily entered. Id. at 7. She noted that she was only advised of the maximum possible penalty of thirty years and the State's plea offer of ten years, but that the plea colloquy did not include the minimum penalty provided by law of 24.45 months, as required by Fla. R. Crim. P. 3.172(c) and as evidenced by her scoresheet. Id. Thus, she concluded that her plea of no contest was not knowingly, intelligently and voluntarily entered. Id. The State declined to file a response. Ex. 11. On

June 15, 2004, the appellate court per curiam affirmed without issuing a written opinion.  <u>Harris v. State</u>, 879 So.2d 641 (Fla. 5th DCA 2004); Ex. 12.

On June 23, 2004, Petitioner filed a motion for rehearing, in which she claimed that if she had known the minimum penalty that she faced, she would not have entered the plea of no contest.  Ex. 13.  On August 3, 2004, the trial court denied the motion for rehearing.  Ex. 15.  The mandate was issued on August 20, 2004. Ex. 16.

On July 30, 2004, the State received a *pro se* document from Petitioner Harris, entitled "Anders Brief Response" and referred to by Petitioner in the undated certificate of service as "Reply Brief."[6]  Ex. 14.  In the appellate brief, Petitioner claimed that the State had made an initial plea offer of 24.45 months of incarceration prior to the offer that she accepted, that this first plea offer had not been conveyed to her by her counsel, that counsel failed to inform her prior to the entry of the plea that she had a maximum exposure of ten years of incarceration and that counsel failed to inform her of the minimum penalty she faced.  <u>Id</u>. In the appellate brief and Petitioner's replies to Respondents' Response, Petitioner refers to an order entered by Judge Mathis, in

_____

[6] Although captioned for filing in the appellate court, there is no record that Petitioner actually filed the appellate brief in the Fifth District Court of Appeal.  While Petitioner submitted exhibits in support of her Petition, she did not submit a copy of this appellate brief.

which he concluded that he would not have accepted a plea of 24.45 months of incarceration based on Petitioner's prior record; however, neither party has submitted an order by Judge Mathis, in which he addressed any claims concerning an initial plea offer of 24.45 months of incarceration. Id. at 4; Petitioner's Response to Respondents' Notice of Filing of Supplemental Appendix (Doc. #20) at 7; Petitioner's Response to Order to Show Cause (Doc. #18) at 8. Petitioner may be referring to Judge Mathis' comments at the plea colloquy regarding her "terrible record" and her six prior cocaine sales. Tr. at 5, 12.

The Petition (signed on March 30, 2005, and filed on April 4, 2005) is timely filed within the one-year period of limitation. See 28 U.S.C. § 2244(d); Response at 7-10.

### III. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 127 S.Ct. 1933, 1940 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id.

This Court has carefully reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing. The pertinent facts of the case are fully developed in the record before the Court. <u>Smith v. Singletary</u>, 170 F.3d 1051, 1054 (11th Cir. 1999). Thus, the Court can "adequately assess [Petitioner's] claim[s] without further factual development." <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 1034 (2004). Therefore, an evidentiary hearing will not be conducted by this Court.

### IV.   Standard of Review

Since this action was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), April 24, 1996, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA. <u>Nelson v. Alabama</u>, 292 F.3d 1291, 1294-95 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 926 (2003); <u>Fugate v. Head</u>, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), <u>cert</u>. <u>denied</u>, 535 U.S. 1104 (2002); <u>Wilcox v. Florida Dep't of Corr.</u>, 158 F.3d 1209, 1210 (11th Cir. 1998), <u>cert</u>. <u>denied</u>, 531 U.S. 840 (2000). Under AEDPA, however, the review "is 'greatly circumscribed and highly deferential to the state courts.' <u>Crawford v. Head</u>, 311 F.3d 1288, 1295 (11th Cir. 2002)." <u>Stewart v. Sec'y, Dep't of Corr.</u>, 476 F.3d 1193, 1208 (11th Cir. 2007).

The Eleventh Circuit has explained this deferential review:

> [Section] 2254(d) allows federal habeas relief
> for a claim adjudicated on the merits in state
> court only if the state court adjudication
> resulted in a decision that was: "(1) . . .
> contrary to, or involved an unreasonable[7]
> application of, clearly established Federal
> law, as determined by the Supreme Court of the
> United States; or (2) . . . based on an
> unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding." 28 U.S.C. § 2254(d);
> Marquard, 429 F.3d at 1303. The phrase
> "clearly established Federal law," as used in
> § 2254(d)(1), encompasses only the holdings,
> as opposed to the dicta, of the United States
> Supreme Court as of the time of the relevant
> state court decision. See Carey v. Musladin,
> 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d
> 482 (2006) (citing Williams v. Taylor, 529
> U.S. 362, 412, 120 S.Ct. 1495, 1523, 146
> L.Ed.2d 389 (2000)); Osborne v. Terry, 466
> F.3d 1298, 1305 (11th Cir. 2006).

Stewart, 476 F.3d at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' §2254(e)(1)." Schriro, 127 S.Ct. at 1939-40 (footnote omitted). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v.

---

[7] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

<u>Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003). <u>See</u> <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1227 (11th Cir. 2004), <u>cert</u>. <u>denied</u>, 545 U.S. 1142 (2005). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## V. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). The Eleventh Circuit captured the essence of an ineffectiveness claim:

> The clearly established federal law for ineffective assistance of counsel claims was set forth by the U.S. Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of counsel, first, "the defendant must show that counsel's performance was deficient . . .

14

[which] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S.Ct. at 2064. Second, the defendant must show that counsel's deficient performance prejudiced him. Id. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068.

Gaskin v. Sec'y, Dep't of Corr., 494 F.3d 997, 1002 (11th Cir. 2007). "Establishing these two elements is not easy: 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" Van Poyck v. Florida Dep't of Corr., 290 F.3d 1318, 1322 (11th Cir. 2002) (per curiam) (citations and footnote omitted), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003).

The Eleventh Circuit stated:

The Supreme Court has established certain principles and presumptions to guide our review of ineffectiveness claims under the flexible, case-specific standards of Strickland. We engage only in a "highly deferential" review of counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689, 104 S.Ct. at 2065 (quotation omitted). As a result of this presumption, a petitioner must show "that no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315

15

> (11th Cir. 2000) (en banc).  Thus, "where the
> record is incomplete or unclear about
> [counsel]'s actions, we will presume that he
> did what he should have done, and that he
> exercised reasonable professional judgment."
> Id. at 1314 n. 15 (quoting Williams v. Head,
> 185 F.3d 1223, 1228 (11th Cir. 1999)).
> Moreover, because the standard is an objective
> one, trial counsel's admission that his
> performance was deficient "matters little."
> Id. at 1315 n.16.  We must also avoid "the
> distorting effects of hindsight" and evaluate
> the reasonableness of counsel's performance
> from the perspective of counsel at the time
> the acts or omissions were made.  Strickland,
> 466 U.S. at 689, 104 S.Ct. at 2065.

Jennings v. McDonough, 490 F.3d 1230, 1243-44 (11th Cir. 2007).

In Hill v. Lockhart, 474 U.S. 52, 58-59 (1985) (footnote omitted), the Court held:

> that the two-part Strickland v. Washington
> test applies to challenges to guilty pleas
> based on ineffective assistance of counsel.
> In the context of guilty pleas, the first half
> of the Strickland v. Washington test is
> nothing more than a restatement of the
> standard of attorney competence already set
> forth in Tollett v. Henderson, supra, and
> McMann v. Richardson, supra.  The second, or
> "prejudice," requirement, on the other hand,
> focuses on whether counsel's constitutionally
> ineffective performance affected the outcome
> of the plea process.  In other words, in order
> to satisfy the "prejudice" requirement, the
> defendant must show that there is a reasonable
> probability that, but for counsel's errors, he
> would not have pleaded guilty and would have
> insisted on going to trial.

Ineffective assistance of counsel may also require that a plea be set aside on the ground that it was involuntary because voluntariness implicates not only threats and inducements but also ignorance and incomprehension.  See Hill v. Lockhart, 474 U.S. at

16

56 (quoting <u>North Carolina v. Alford</u>, 400 U.S. 25, 31 (1970)) (noting that the "longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'").

> "A guilty plea is open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980) (quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970)); <u>see</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 58-59, 106 S.Ct. 366, 370-71, 88 L.Ed.2d 203 (1985) (holding that, in the plea context, a habeas petitioner establishes ineffective assistance of counsel by demonstrating that counsel's advice and performance fell below an objective standard of reasonableness, based upon which he pled guilty). For a guilty plea to "represent an informed choice" so that it is constitutionally "knowing and voluntary," the "[c]ounsel must be familiar with the facts and the law in order to advise the defendant of the options available." <u>Scott v. Wainwright</u>, 698 F.2d 427, 429 (11th Cir. 1983). "The failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the <u>Strickland</u> analysis . . . as such an omission cannot be said to fall within 'the wide range of professionally competent assistance' demanded by the Sixth Amendment." <u>Hill</u>, 474 U.S. at 62, 106 S.Ct. at 372 (White, J., concurring) (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984)).

<u>Finch v. Vaughn</u>, 67 F.3d 909, 916 (11th Cir. 1995).

A federal habeas court reviews a state court guilty plea only for compliance with constitutional protections.

> This court has concluded that "[a] reviewing
> federal court may set aside a state court
> guilty plea only for failure to satisfy due
> process:   If a defendant understands the
> charges    against    him,    understands    the
> consequences of a guilty plea, and voluntarily
> chooses to plead guilty, without being coerced
> to do so, the guilty plea . . . will be upheld
> on federal review." Stano v. Dugger, 921 F.2d
> 1125,   1141   (11th  Cir.)  (en  banc),  cert.
> denied, ___ U.S. ___, 112 S.Ct. 116, 116 L.Ed.
> 2d 85 (1991).

Jones v. White, 992 F.2d 1548, 1556-57 (11th Cir.), cert. denied,

510 U.S. 967 (1993).

Thus, in order for a guilty plea to be constitutionally valid,

it must be made knowingly, intelligently, and voluntarily.  Pardue

v. Burton, 26 F.3d 1093, 1096 (11th Cir. 1994).

> A guilty plea is an admission of criminal
> conduct as well as the waiver of the right to
> trial.  Brady v. United States, 397 U.S. 742,
> 748,  90  S.Ct.  1463,  1469,  25  L.Ed.2d  747
> (1970).  "Waivers of constitutional rights not
> only must be voluntary but must be knowing,
> intelligent   acts   done   with   sufficient
> awareness  of  the  relevant  circumstances  and
> likely consequences."  Id.; United States v.
> Fairchild, 803 F.2d 1121, 1123 (11th Cir.
> 1986) (per curiam).

> Reviewing federal courts "may set aside a
> state court guilty plea only for failure to
> satisfy due process." Stano v. Dugger, 921
> F.2d 1125, 1141 (11th Cir.) (en banc), cert.
> denied, 502 U.S. 835, 112 S.Ct. 116, 116
> L.Ed.2d 85 (1991).  "[W]hen it develops that
> the defendant was not fairly apprised of its
> consequences" or when "the defendant pleads
> guilty   on   a   false   premise"   in   the
> prosecution's plea agreement, a guilty plea
> violates the Due Process Clause.  Mabry v.
> Johnson, 467 U.S. 504, 509, 104 S.Ct. 2543,
> 2547, 81 L.Ed.2d 437 (1984).  The Court has
> instructed that the "essence" of any promises

that induce a guilty plea "must in some way be made known" to the defendant.  Santobello v. New York, 404 U.S. 257, 261-62, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971).

For a guilty plea to be entered knowingly and intelligently, "'the defendant must have not only the mental competence to understand and appreciate the nature and consequences of his plea but he also must be reasonably informed of the nature of the charges against him, the factual basis underlying those charges, and the legal options and alternative that are available.'" Stano, 921 F.2d at 1142 (citation omitted) (emphasis added). Voluntariness implicates "[i]gnorance, incomprehension," and "inducements" as well as "coercion, terror" and "threats." Boykin v. Alabama, 395 U.S. 238, 242-43, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); Stano, 921 F.2d at 1141. Thus, "[i]gnorance of the consequences of a guilty plea may require its rejection." Stano, 921 F.2d at 1141 (citing Boykin, 395 U.S. at 243-44, 89 S.Ct. at 1712).

Finch, 67 F.3d at 914-15.

## VI. Findings of Fact and Conclusions of Law

Petitioner claims that her plea was involuntarily entered because of threats of harsher treatment if she insisted on proceeding to trial.  Specifically, she alleges the following:

Defendant was told by her defense attorney immediately prior to [the] plea colloquy that the State was offering her 10 years and that if she didn't take it, she would receive more time if she insisted on going to trial. Defense attorney advised defendant that she would receive anything between 10 to 30 years. Defendant was never advised of her scoresheet calculations showing [a] minimum sentence of 24 months. Had defendant not felt threatened with [a] harsher sentence if she proceeded to trial, she would not have entered [the] plea of no contest.

19

Petition at 5.  Petitioner's ground is two-fold in that she claims her plea was involuntarily entered because (1) she was never advised of the scoresheet calculation, reflecting a minimum sentence of 24.45 months, and (2) defense counsel coerced her into entering the plea by advising her that if she rejected the plea offer and then proceeded to trial and was convicted, her sentence would be "anything between 10 to 30 years."  Id.

Respondents contend that these claims were not raised in the state courts and are now procedurally defaulted.  Response at 10-12.  Specifically, Respondents state that the first sub-claim was never raised in Petitioner's Rule 3.850 motion, but was raised in the appellate brief.  Id. at 11-12.  In reviewing Petitioner's Rule 3.850 motion (Ex. 8) and the Initial Brief of Appellant (Ex. 10), this Court is of the opinion that Petitioner Harris sufficiently raised the first claim (that she was never advised of the scoresheet calculation, reflecting a minimum sentence of 24.45 months) in the state courts.  See Ex. 8 at 6, 9 (ground four)[8]; Ex. 10 at 7.  Therefore, Respondents' contention that the first sub-claim is procedurally barred is unavailing.

---

[8] In ground four of the Rule 3.850 motion, Petitioner Harris claimed that she was not advised of the minimum and maximum penalties for the charges, that she failed to understand the consequences of the plea and maximum penalty provided by law and that failure to advise her of the maximum possible sentence is an error invalidating the guilty plea.  Ex. 8 at 9 (citing Fla. R. Crim. P. 3.172).

This Court concludes that Petitioner adequately raised the first sub-claim (as ground four) in the Rule 3.850 motion.  Ex. 8 at 9.  In denying the Rule 3.850 motion with respect to this claim, the trial court stated in pertinent part:

> Ground four is clearly refuted by the record.  The Defendant was advised, on page 4 of the transcript of the proceedings, that the maximum possible penalty is 30 years, and the Defendant was clearly placed on notice at the time of the plea, once again on page 6, line 7 of the transcript, that she was facing a potential liability of 30 years, and on lines 15 thru 17, that the extent of the plea agreement would be 10 years incarceration, concurrent on both counts.  The Defendant did note and acknowledge that it was her intention, on line 20, page 6.  Ground four is therefore clearly without merit.

Ex. 9 at 2.

Further, as previously noted and as acknowledged by Respondents, Petitioner raised this first sub-claim in his appellate brief, and the appellate court per curiam affirmed without issuing a written opinion.  <u>Harris</u>, 879 So.2d 641; Ex. 12. Thereafter, Petitioner filed a motion for rehearing (claiming that if she had known the minimum penalty of 24.45 months, she would not have entered the plea of no contest), and the appellate court denied the motion for rehearing.  Ex. 13; Ex. 15.

Accordingly, this claim was rejected on the merits by the state trial and appellate courts.  Thus, this claim should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.  Upon a

thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Further, this claim is without merit. Petitioner contends that the plea colloquy did not include the minimum penalty of 24.45 months, as reflected on her scoresheet and as required by Fla. R. Crim. P. 3.172(c). <u>See</u> Petitioner's Response to Respondents' Notice of Filing of Supplemental Appendix (Doc. #20) at 5-6, 8. Clearly, the Criminal Punishment Code Scoresheet, which was prepared by Assistant State Attorney Chris France contemporaneously to the sentencing, reflects the lowest permissible prison sentence as 24.45 months. Ex. 4.

Judge Mathis did not err in failing to inform Petitioner of the minimum sentence provided by the Criminal Punishment Code Scoresheet. Rule 3.172(c) provides that:

> [T]he trial judge should, when determining voluntariness, place the defendant under oath and shall address the defendant personally and shall determine that he or she understands:
>
> (1) the nature of the charge to which the plea is offered, the maximum possible penalty, and any mandatory minimum penalty provided by law[.]

Fla. R. Crim. P. 3.172(c).  The Fifth District Court of Appeal has

stated:

> We note that the trial court was not
> required to advise Wagner at the time of the
> plea of the minimum sentence provided by the
> Criminal Punishment Code scoresheet.  Florida
> Rule of Criminal Procedure 3.172, adopted from
> Federal Rule of Criminal Procedure 11(c),
> governs the taking of pleas in criminal cases.
> See Koenig v. State, 597 So.2d 256 (Fla.
> 1992).  When accepting a plea, rule
> 3.172(c)(1), Florida Rules of Criminal
> Procedure, requires that the trial court
> determine that the defendant understands "the
> nature of the charge to which the plea is
> offered, the mandatory minimum penalty
> provided by law, if any, and the maximum
> possible penalty provided by law."  Rule 11(c)
> has identical requirements.  **Neither rule
> requires a defendant be advised of the minimum
> sentence.**  Because rule 3.172 was adopted from
> federal rule 11(c), it is helpful to turn to
> federal decisions that explain why advisement
> of the minimum sentence has never been a
> requirement of the rule.
>
> The federal courts reason that it is not
> necessary to advise a defendant of either the
> minimum or maximum guidelines sentence because
> at the time many defendants enter their pleas,
> the prosecutors and the trial courts usually
> do not have sufficient information available
> to them to make an accurate calculation.
> United States v. Andrades, 169 F.3d 131 (2d
> Cir. 1999); United States v. DeFusco, 930 F.2d
> 413 (5th Cir. 1991) (en banc); United States
> v. Rhodes, 913 F.2d 839, 843-44 (10th Cir.
> 1990), cert. denied, 498 U.S. 1122, 111 S.Ct.
> 1079, 112 L.Ed.2d 1184 (1991); United States
> v. Jones, 905 F.2d 867 (5th Cir. 1990); see
> also United States v. DeJesus-Abad, 263 F.3d 5
> (2d Cir. 2001).  That is why presentence
> investigation reports are generally ordered
> after a plea is entered so the information may
> be available at sentencing to make the proper
> calculations.  Rhodes; Jones; accord Vitiello.

> **Therefore, all that is required is that the
> defendant be advised of the maximum penalty or
> of any minimum mandatory sentence.** <u>DeFusco</u>;
> <u>Rhodes</u>; <u>Jones</u>.
>
>    . . . .
>
> Moreover, Wagner voluntarily entered his plea
> knowing full well all of the consequences
> associated with that act, including the fact
> that he could receive any sentence up to the
> statutory maximum for each charge.

<u>Wagner v. State</u>, 895 So.2d 453, 458-59 (Fla. 5th DCA) (footnotes omitted) (emphasis added), <u>rev</u>. <u>denied</u>, 909 So.2d 863 (Fla. 2005).

In reviewing the record before this Court, it is clear that Petitioner voluntarily entered the plea of nolo contendere to the two counts of sale of cocaine and knew that, pursuant to the plea agreement, she would receive a sentence of ten years of incarceration on each count, to run concurrently. Tr. at 6. She also knew that, if she had proceeded to trial and had been found guilty of both counts, she would have faced up to thirty years of incarceration. <u>Id</u>. Specifically, Judge Mathis informed Petitioner Harris of the sentencing possibilities if she were to proceed to trial.

> Sale of cocaine carries up to 15 years in
> the Florida State Prison, a $10,000 fine or
> both such fine or imprisonment. **You may be
> considered for probation or lesser sentencing.**

<u>Id</u>. at 7 (emphasis added). Further, the trial judge, prosecutor and defense counsel made it clear to Petitioner that, based on her prior "terrible record" of six sales of cocaine, one sale of counterfeit cocaine, one possession of cocaine and eight various

24

misdemeanors, she faced "a substantial period of time," up to thirty years. Id. at 4-6.

In exchange for entering the plea of nolo contendere, she received the agreed-upon benefit of ten years of incarceration for two counts of sale of cocaine, which carried a maximum penalty of thirty years of incarceration.   As she affirmed at the plea hearing, she believed the plea was in her best interest.  Id. at 10.  Although a defendant's statements during the plea colloquy are not insurmountable, the Supreme Court held in Blackledge v. Allison, 431 U.S. 63, 73-74 (1977), that "the representations of the defendant [at a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity."  Here, based upon the record before this Court, Petitioner has not overcome this barrier. And, finally, as noted by the trial judge in denying the Rule 3.850 motion with respect to this claim, Petitioner "was clearly placed on notice at the time of the plea" that "she was facing a potential liability of 30 years" and that "the extent of the plea agreement would be 10 years incarceration, concurrent on both counts."  Ex. 9 at 2 (citing Tr. at 4, 6).

With respect to the second sub-claim (defense counsel coerced her into entering the plea by advising her that if she rejected the plea offer and then proceeded to trial and was convicted, her sentence would be "anything between 10 to 30 years."), Respondents

contend that this claim was not raised in the state courts and is now procedurally defaulted.  Response at 12.  Petitioner never raised this claim in the Rule 3.850 motion or in the appellate brief.  See Ex. 8; Ex. 10.

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies.  See Castille v. Peoples, 489 U.S. 346, 349, reh'q denied, 490 U.S. 1076 (1989); Rose v. Lundy, 455 U.S. 509 (1982).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  Turner, 339 F.3d at 1281 (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999)).  "This exhaustion doctrine 'is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts.'"  Turner, 339 F.3d at 1281 (quoting O'Sullivan, 526 U.S. at 845).

Generally, a federal habeas petition should be dismissed if the petitioner has failed to exhaust state remedies.  See Keeney v. Tamayo-Reyes, 504 U.S. 1, 10 (1992).  A federal court need not dismiss the petition to allow for exhaustion of state remedies, however, if such a dismissal would be futile.

> [I]f the petitioner simply never raised a
> claim in state court, and it is obvious that
> the unexhausted claim would now be
> procedurally barred due to a state-law
> procedural default, the federal court may
> foreclose the petitioner's filing in state
> court; the exhaustion requirement and

> procedural default principles combine to mandate dismissal.

Bailey v. Nagle, 172 F.3d 1299, 1303 (11th Cir. 1999) (per curiam) (citing Snowden v. Singletary, 135 F.3d 732, 737 (11th Cir.), cert. denied, 525 U.S. 963 (1998)).

It would be futile to dismiss this case to give the Petitioner an opportunity to exhaust the claim in state court because she could have and should have raised the claim in her motion for post-conviction relief.  If Petitioner attempted to raise such a claim in another Rule 3.850 motion at this time, such a motion would be subject to dismissal as successive, see Fla. R. Crim. P. 3.850(f), and untimely.  See Fla. R. Crim. P. 3.850(b).  Thus, this claim has been procedurally defaulted.

"Procedural defaults in state courts will foreclose federal court review, absent a showing of cause and prejudice."  Parker v. Sec'y for the Dep't of Corr., 331 F.3d 764, 770 (11th Cir. 2003) (citing Wainwright v. Sykes, 433 U.S. 72 (1977)), cert. denied, 540 U.S. 1222 (2004).  "[A] federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice."  Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002) (per curiam) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)), cert. denied, 538 U.S. 947 (2003).  The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere

27

"'legal' innocence." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), <u>cert</u>. <u>denied</u>, 535 U.S. 926 (2002).

Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar.  Furthermore, she has not shown that she is entitled to the fundamental miscarriage of justice exception.  Thus, this claim is procedurally barred from review in this Court and need not be addressed on the merits.

However, even assuming that this claim is not procedurally barred, the claim is without merit since the record before this Court reflects that Petitioner voluntarily entered the plea of nolo contendere and knew the consequences of her entering the plea.  As previously noted, the trial judge informed Petitioner that sale of cocaine carries a penalty of up to fifteen years of incarceration, but that she may be considered for probation or lesser sentencing. Tr. at 7.  Additionally, Petitioner acknowledged that entering the plea was in her best interest, that no one had used any threats, force, pressure or intimidation to make her enter the plea and that no one had promised her anything, other than the plea bargain, to persuade her to enter the plea.  <u>Id</u>. at 10-11.  The prosecutor, defense counsel and Judge Mathis commented, at the plea hearing, that Petitioner faced "a substantial period of time," up to thirty years, due to her prior "terrible record" of six sales of cocaine, one sale of counterfeit cocaine, one possession of cocaine and eight various misdemeanors.  <u>Id</u>. at 4-6.

Any claims not specifically addressed are found to be without merit. Accordingly, for the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.   The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.   The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of August, 2008.

TIMOTHY J. CORRIGAN
United States District Judge

sc 8/7
c:
Francesca Rene Harris
Ass't Attorney General of Record